IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SAMUEL OLEKANMA,                    *

    Plaintiff,                        *

v.                                  *        Civil Action No. GLR-23-600

CAROLYN SCRUGGS, et al.,            *

    Defendants.                       *

                        ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Carolyn J. Scruggs, Katherine Kennedy, Damean Stewart, and J. Philip Morgan's Motion to Dismiss (ECF No. 13) and Motion to Strike Surreply (ECF No. 21). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant the Motion to Dismiss and deny the Motion to Strike.

## I.     BACKGROUND[1]

### A.   **Factual Background**

Self-represented Plaintiff Samuel Olekanma is a self-identified male corrections officer. (Second Am. Compl. ¶¶ 13–15 ECF No. 5). Starting in 2004, Olekanma worked at a prison for male inmates. (Id. ¶ 28). On July 17, 2021, Phil Morgan, Assistant Commissioner of Maryland Correctional Institute Jessup ("JSI"), reassigned Olekanma to

---

[1] Unless otherwise noted, the Court takes the following facts from the Second Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

work at a women's prison, where Olekanma worked until October 18, 2021. (Id. ¶¶ 15, 28). Olekanma was not given any reason for the reassignment, and he was not allowed to refuse the new assignment without risking losing his job. (Id.).

Olekanma alleges wide-spread corruption exists within the Maryland Department of Public Safety and Correctional Services ("MDPSCS"). (Id. ¶ 21). Specifically, he alleges that "most of the promotion[s] are based on sexual rewards and compensation of the higher authority and management staff," and that "[y]oung female inexperienced officers climb the hierarchy of the agency fast while hard working experienced officers are usually left or subjected to slavery and unrecognition." (Id.). He alleges he was reassigned to the women's prison in retaliation for his reports of discrimination and because he is male. (Id. ¶¶ 10, 21).

At the women's prison, Olekanma was "subjected to inhuman treatment by his employer" because he was required to "watch and observe female inmates in a state of undress." (Id. ¶ 16). Olekanma alleges that the role "negatively impacted his sexual health." (Id.). Olekanma has sought medical treatment, "but none of the medications have been effective in treating his condition." (Id. ¶ 17).

Olekanma also alleges Defendants denied him promotions based on his sex (male) and place of origin (Nigeria), despite Olekanma meeting all the required qualifications. (Id. ¶¶ 19, 30). He alleges Defendants instead promoted employees who failed to meet even the minimum requirements. (Id.).

In addition to discrimination, Olekanma also alleges Defendants failed to pay his wages. (Id. ¶ 24). He reported the wage issues to Katherine Kennedy, Human Resources

Manager at MDPSCS, but she "ignored, ridiculed, or justified the wage theft." (Id. ¶ 26).

He also reported the wage theft to Damean Stewart, Assistant Warden of JSI, along with

the Union, who similarly ignored his complaints. (Id. ¶¶ 27, 29). Olekanma seeks damages

for "physical and emotional harm, lost wages and benefits, injunctive relief to prevent

further discrimination and retaliation, and any other relief this [C]ourt deems just and

proper." (Id. ¶ 11).[2]

## B.   Procedural History

On March 6, 2023, Olekanma filed a Complaint against MDPSCS, Carolyn J.

Scruggs, Katherine Kennedy, Damean Stewart, and J. Philip Morgan. (ECF No. 1). On

April 7, 2023, Olekanma filed an Amended Complaint against the same individual

---

[2] Olekanma alleges that MDPSCS personnel were involved in a gun incident at his home. (See Second Am. Compl. ¶ 22). The Court declines to address the gun incident because that matter is barred by res judicata; Olekanma litigated this exact issue in at least one other case. (See Olekanma v. Chippendale et al. ["Olekanma 1"], No. ELH 1:19-cv-01664, Compl. at 12–13, ECF No. 1).

Res judicata has three elements: "(1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation." Spangler v. McQuitty, 141 A.3d 156, 175 (Md. 2016) (quoting Cochran v. Griffith Energy Servs., Inc., 43 A.3d 999, 1002 (Md. 2012)).

Here, the Defendants are in privity with the parties in the earlier litigation because they are all personnel of the MDPSCS; the claim presented here, arising from the alleged violent gun incident, is identical to the one in the prior action; and there was a final judgment on the merits. (See Olekanma 1, Oct. 15, 2019 Order at 1, ECF No. 7 ("[T]he investigation of the criminal offenses is the purview of law enforcement authorities, and as a private citizen Olekanma lacks standing to bring criminal charges against another.")). The Court takes notice of this Order. See Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting that "[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records"). Accordingly, the Court will focus on Olekanma's discrimination and wage claims.

Defendants but dropped MDPSCS. (ECF No. 4). On May 1, 2023, Olekanma filed a Second Amended Complaint against only the same individual Defendants. (ECF No. 5). The four-count Second Amended Complaint alleges violations of the Maryland Wage Payment Collection Act, Md. Code, Labor and Employment ("LE"), § 3-501 et seq. (the "MWPCA") (Counts I–III), and hostile work environment, retaliation, and discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Count IV). (Second Am. Compl. ¶¶ 9, 10, 31–52). On October 24, 2023, Defendants filed a Motion to Dismiss. (ECF No. 13). Olekanma filed his Opposition on November 21, 2022. (ECF No. 16). On December 12, 2023, Defendants filed a Reply. (ECF No. 19). Olekanma filed a Surreply on December 15, 2023. (ECF No. 20). Defendants filed a Motion to Strike the Surreply on December 18, 2023. (ECF No. 21). Olekanma filed an Opposition to the Motion to Strike on December 19, 2023. (ECF No. 22).[3]

## II.    DISCUSSION

### A.    <u>Motion to Strike</u>

Defendants urge the Court to strike Olekanma's Surreply because he failed to seek leave from this Court prior to filing his Surreply and Defendants did not offer additional facts in their Reply. (Def's Mem. Supp. Mot. Strike ["Mot. Strike"] at 1–2, ECF No. 21).[4]

---

[3] Olekanma indicates his Second Amended Complaint is a "criminal complaint." (See Second Am. Compl. ¶ 6). But as this Court has previously instructed, "[a]s a private citizen, Olekanma lacks standing to bring criminal charges." <u>Olekanma v. Chippendale</u>, No. ELH-19-1664, 2019 WL 2904666, at *2 (D.Md. July 3, 2019). Accordingly, Olekanma's criminal claims are dismissed.

[4] Citations to the record refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

Though surreplies are generally not permitted, see Local Rule 105.2(a), the Court in its discretion may allow a party to file a surreply. EEOC v. Freeman, 961 F.Supp.2d 783, 801 (D.Md. 2013), aff'd in part, 778 F.3d 463 (4th Cir. 2015). This discretion is typically used in the interest of fairness to permit parties to respond to new matters raised for the first time in the opposing parties' reply briefs. See Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md. 2003), aff'd, 85 F.App'x 960 (4th Cir. 2004). Courts have also used this discretion to permit self-represented parties to file surreplies even where no new matters were raised in the reply brief. See Williams v. Bartee, No. CCB-10-935, 2011 WL 2842367, at *2 (D.Md. July 14, 2011) (permitting pro se party to file surreply that does not address new material but also does not "unduly prejudice defendants"), aff'd sub nom. Williams v. Merritt, 469 F.App'x 270 (4th Cir. 2012). Although Defendants did not raise new arguments in their Reply, the Court will consider Olekanma's Surreply due to his self-represented status. Further, the Court finds that because the arguments contained in Olekanma's Surreply do not change the outcome of its analysis below, Defendants will not be unduly prejudiced by them. Accordingly, the Court will deny the Motion to Strike, (ECF No. 21), and consider his Surreply below.

**B.   Motion to Dismiss**

Defendants have moved to dismiss all counts in the Complaint. The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a

short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Complaints drafted by self-represented plaintiffs are held to a less stringent standard than those drafted by attorneys, and courts must liberally construe these complaints. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black

Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

### 1.      Wage Claims (Counts I, II, and III)

Olekanma alleges "defendant employer's failure to pay the plaintiff's wages as agreed upon, as evidenced by unpaid invoices and lack of records provided to the plaintiff, constitutes a violation of the Maryland Wage and Hour Law." (Second Am. Compl. ¶ 31). Defendants contend that Olekanma's state wage claims fail because (1) there is no individual liability under the MWPCA and (2) he "has not cited to the amount of wages purportedly owed to him and failed to include or describe the 'emails and unpaid' invoices in his Second Amended Complaint that he contends to have to support his claims." (Def.'s Mem. Supp. Mot. Dismiss ["Mot. Dismiss"] at 11–12, ECF No. 13-1). At bottom, the Court finds that Olekanma fails to state a claim under the MWPCA.

The MWPCA provides that an "employer shall pay an employee . . . all wages due for work that the employee performed before the termination of employment." Md. Code Ann., Lab. & Empl., § 3-505(a). "Restated simply, where an employee earns wages under the Act, the employer must pay them, regardless of the ensuing termination of the employee." Medex v. McCabe, 811 A.2d 297, 304 (Md. 2002); Bystry v. Verizon Servs. Corp., No. CCB-04-1, 2005 WL 8147293, at *12 (D.Md. Mar. 31, 2005). The United States Court of Appeals for the Fourth Circuit has adopted the "economic reality test" to determine whether an employer-employee relationship exists. Schultz v. Capital Int'l Sec., Inc., 466 F.3d 298, 304 (4th Cir. 2006); Rivera v. Mo's Fisherman Exch., Inc., No. ELH-15-1427, 2018 WL 2020423, at *11 (D.Md. May 1, 2018).

Defendants argue that Olekanma has not sufficiently alleged they engaged in any specific conduct showing them to be an "employer" under the MWPCA. (Mot. Dismiss at 17–18). As noted, Olekanma listed MDPSCS in his initial complaint (ECF No. 1), but then dropped MDPSCS in his First and Second Amended Complaints, (ECF Nos. 4, 5). He has done this before. See Olekanma v. Wolfe, No. DKC 15-0984, 2017 WL 784121, at *5 (D.Md. Mar. 1, 2017). There, Judge Chasanow determined that "[b]ecause MDPSCS was originally named, it should be reinstated in spite of its absence from the first and second amended complaints." Id. Due to Olekanma's self-represented status, this Court will similarly consider Olekanma's allegations as against MDPSCS and therefore does not need to engage in the economic reality test to determine whether the individually named Defendants are employers.

Defendants assert that even if Olekanma sufficiently alleges employer status under the MWPCA, his Complaint must still be dismissed for failure to state a claim. (Mot. Dismiss. at 10–11, 17). The Court agrees.

Regarding his wage claims, Olekanma contends (1) "all evidence and facts supporting the allegation and claim has been provided and or [filed] with this court in the initial complaint," (2) he "attached unpaid invoices and grievances with dates as evidence," in his Second Amended Complaint and (3) the Department of Labor is investigating Defendants for wage theft. (Second Am. Compl. ¶¶ 12, 24–25). The Court will address each contention in turn.

First, Olekanma offers no additional detail regarding the alleged unpaid wages in his First or Second Amended Complaint. (See generally Compl., ECF No. 1; Am. Compl.,

ECF No. 4). Second, Olekanma does not describe the unpaid invoices in any of his complaints. Third, a vague reference to a Department of Labor investigation has no bearing on whether Defendants are liable for Olekanma's alleged wage theft. In sum, "[a]lthough plaintiff contends that [he has unpaid wages], []he does not allege, with even a modicum of particularity, the basis for a claim . . . " Allgaier v. Microbiologics, Inc., No. 1:22-01900-ELH, 2023 WL 2837336, at *14 (D.Md. Apr. 7, 2023). Accordingly, Olekanma has not stated a claim for relief under the MWPCA, and Counts I, II, and III will be dismissed.[5]

  **2. Title VII (Count IV)**

  Defendants argue all Title VII claims against them should be dismissed because there is no liability for employees in their individual capacities for violations of Title VII. (Mot. Dismiss at 12–13).

  Title VII instructs that "a person cannot be held liable under Title VII in his or her individual capacity unless the person qualifies as an 'employer' within the meaning of the statute." Hughley v. JetBlue Airways Corp., No. GLR-19-3523, 2020 WL 3451984, at *3 (D.Md. June 24, 2020). In other words, "[e]mployees are not liable in their individual capacities for Title VII violations." Lissau v. S. Food Serv., Inc., 159 F.3d 177, 178 (4th Cir. 1998).

  Here, Olekanma alleges (1) Carolyn Scruggs is the Secretary of MDPSCS; (2) Katherine Kennedy is the Human Resources Manager of MDPSCS; (3) Damean Stewart

---

[5] To the extent Olekanma brings a claim under the Maryland Wage and Hour Law ("MWHL"), Md. Code, Lab. & Empl. §§ 3-401 et seq., or the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, his claims also fail for all the same reasons as stated under the MWPCA.

is the Assistant Warden of JSI; and (4) Phil Morgan is the Assistant Commissioner of JSI. (Second Am. Compl. ¶¶ 2, 25–28). Although there is no individual liability under Title VII, there is some support that "[a] Title VII claim may be brought against a prison warden in his official capacity." Olekanma, 2017 WL 784121, at *5. In any event, as noted, the Court will consider Olekanma's claims as against MDPSCS.

### a.   Discrimination

Defendants argue Olekanma has failed to state a plausible claim for discrimination due to his sex or national origin. (Mot. Dismiss at 18–21). Title VII prohibits an employer from discriminating against employees due to race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). A plaintiff may establish a Title VII claim "either 'through direct and indirect evidence of retaliatory [or discriminatory] animus,' or through a burden-shifting 'pretext' framework." Netter v. Barnes, 908 F.3d 932, 938 (4th Cir. 2018) (quoting Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015)).

The Complaint does not include allegations of direct evidence of discrimination. See Cole v. Fam. Dollar Stores of Md., Inc., 811 F.App'x 168, 175 (4th Cir. 2020) ("Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" (quoting Taylor v. Va. Union Univ., 193 F.3d 219, 232 (4th Cir. 1999))). Accordingly, the Court will evaluate Olekanma's claim under the burden-shifting framework first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

To establish a discrimination or retaliation claim under the <u>McDonnell Douglas</u> burden-shifting framework, Olekanma must <u>eventually</u> put forth a prima facie case by establishing that:

> (1) he belongs to a protected class;
> (2) he suffered an adverse employment action;
> (3) at the time of the adverse action, he was performing his job at a level that met his employer's legitimate expectations . . . ; and
> (4) he was [transferred] under circumstances giving rise to an inference of unlawful discrimination.

<u>See</u> <u>Adams v. Trs. of the Univ. of N.C.-Wilmington</u>, 640 F.3d 550, 558 (4th Cir. 2011). The precise formulation of the required prima facie showing will vary in "differing factual situations," <u>McDonnell Douglas</u>, 411 U.S. at 802 n.13, and the elements were "'never intended to be rigid, mechanized, or ritualistic,'" <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. 506, 512 (2002) (quoting <u>Furnco Constr. Corp. v. Waters</u>, 438 U.S. 567, 577 (1978)). If Olekanma succeeds in establishing a prima facie case, the burden shifts to the employer to "present a legitimate, non-discriminatory reason for its employment action." <u>Mackey v. Shalala</u>, 360 F.3d 463, 468 (4th Cir. 2004). If the employer does so, "the burden shifts back to the employee to show that the given reason was just a pretext for discrimination." <u>Id.</u>

The Court is mindful that a Title VII plaintiff need not satisfy all the elements set forth above to survive a motion to dismiss. <u>See</u> <u>Swierkiewicz</u>, 534 U.S. at 510 ("The prima facie case under <u>McDonnell Douglas</u>, however, is an evidentiary standard, not a pleading requirement."); <u>accord</u> <u>Parker v. Child.'s Nat'l Med. Ctr., Inc.</u>, No. ELH-20-3523, 2021 WL 5840949, at *9 (D.Md. Dec. 9, 2021) ("At the motion to dismiss stage, a plaintiff need not establish a prima facie case of discrimination."). Instead, at the motion to dismiss stage,

a plaintiff need only "allege[] facts that plausibly state a violation of Title VII 'above a speculative level.'" Bing v. Brivo Sys., LLC, 959 F.3d 605, 617 (4th Cir. 2020) (quoting Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010)), cert. denied, 141 S.Ct. 1376 (2021). Thus, the plaintiff must generally show that the employer took adverse action against the plaintiff "under circumstances which give rise to an inference of unlawful discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); Adams, 640 F.3d at 558. This requirement can be met by showing that "similarly-situated employees outside the protected class received more favorable treatment." White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004).

The Court considers the "totality of the circumstances" in determining whether Olekanma has adequately alleged discrimination. See Strothers v. City of Laurel, 895 F.3d 317, 330–31 (4th Cir. 2018) ("[T]he connection between animus and conduct may be inferred from the totality of the circumstances."); see also Woods v. City of Greensboro, 855 F.3d 639, 649 (4th Cir. 2017) (concluding that a court "may infer discriminatory intent from evidence of a general pattern of . . . discrimination in the practices of a defendant"); Guirkin v. CMH Physician Servs., LLC, No. 3:20CV59, 2020 WL 6829769, at *7 n.13 (E.D.Va. Nov. 20, 2020) ("Although [plaintiff's] individual allegations do not by themselves prove discriminatory animus, the totality of circumstances surrounding his termination gives rise to the inference that [plaintiff] was fired, at least in part, because of his [protected status].").

Here, Olekanma satisfies the first element because he is a member of a protected class as a Nigerian male. (EEOC Compl. at 8, ECF No. 1-4).[6] Regarding the second element, an adverse employment action is "a discriminatory act that adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." <u>Roberts v. Glenn Indus. Grp., Inc.</u>, 998 F.3d 111, 122 (4th Cir. 2021). Liberally construing his Complaint, Olekanma appears to allege that the conditions of the women's prison adversely affected his employment; as such, Olekanma satisfies the second element. (Second Am. Compl. ¶ 16). Olekanma alleges he performed his job well, satisfying the third element. (<u>Id.</u> ¶ 19).

Olekanma fails, however, to plead the fourth element. He pleads no facts to support that he was transferred under circumstances giving rise to an inference of unlawful discrimination. Other than conclusory allegations that MDPSCS is "corrupt" and that "most of the promotion[s] are based on sexual rewards," and "[y]oung female inexperienced officers climb the hierarchy of the agency fast while hard working experienced officers are usually [ ] subjected to slavery and unrecognition," (<u>Id.</u> ¶ 21), Olekanma has not alleged any facts to show he was transferred because of his national origin or sex. Olekanma further alleges that "he has been treated differently from other employees who did not meet the minimum performance." (<u>Id.</u> ¶ 19). Courts can consider comparator evidence to support an inference of discrimination. <u>See</u> <u>White</u>, 375 F.3d at 295.

_____

[6] While a court may not ordinarily consider extrinsic evidence when resolving a Rule 12(b)(6) motion, <u>see</u> <u>Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC</u>, 794 F.Supp.2d 602, 611 (D.Md. 2011), this general rule is subject to several exceptions. <u>See</u> Fed.R.Civ.P. 10(c). Here, the Complaint expressly references the EEOC filings, and there is no dispute as to their authenticity. Accordingly, the Court will consider these documents.

But here, Olekanma fails to allege facts to show these other alleged comparators fell outside of his protected class, or that they were similarly situated to him. Accordingly, Olekanma's claims of discrimination will be dismissed.[7]

> ### b.    Retaliation

Olekanma also appears to allege that Defendants transferred him to the women's prison in retaliation for his complaints of discrimination. (Id. ¶ 10).

Title VII prohibits an employer from retaliating against an employee who exercises his Title VII rights. Hart v. Lew, 973 F.Supp.2d 561, 582 (D.Md. 2013). To establish a prima facie claim of retaliation under Title VII, Olekanma "must show that he engaged in protected activity, that his employer took adverse action against him, and that a causal relationship existed between the protected activity and the adverse employment activity." Id. (cleaned up). If he succeeds in establishing a prima facie case of retaliation, the McDonnell Douglas framework requires that Defendants "offer[] a non-discriminatory explanation for the adverse action," to which Olekanma may only rebut by "establishing that [Defendants'] proffered explanation is pretext. Id. (quoting Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011).

---

[7] Olekanma also alleges MDPSCS engaged in a policy of only promoting only individuals from a certain tribe in Nigeria. (Second Am. Compl. ¶ 30). Defendants counter that Olekanma filed his EEOC Complaint based on this claim on March 24, 2016, and that his claim is barred by the statute of limitations because well over ninety days have since lapsed. (Mot. Dismiss at 7–8). The Court agrees and will not consider his claims related to the allegedly discriminatory promotions. See Johnson v. Balt. Police Dept., 2023 WL 6381487 at *4 (D.Md. Sept. 29, 2023) (citing Laber v. Harvey, 438 F.3d 404, 416 (4th Cir. 2006)).

Here, Olekanma engaged in protected activity by reporting discrimination, satisfying the first element. (Second Am. Compl. ¶ 10). As previously noted, liberally construing his Complaint, Olekanma's transfer constitutes adverse action, satisfying the second element. Olekanma's claim fails on the third element, however, because he does not allege sufficient facts to show a causal connection between his reports of discrimination and his subsequent transfer. Olekanma was transferred to the women's prison in 2021, but the only timeline he provides of when he reported discrimination is the EEOC Complaint dated 2016, (EEOC Compl. at 1), which is too attenuated to plausibly allege a causal connection. See e.g., Barnes v. Charles Cnty. Pub. Sch., 747 F.App'x 115, 119 (4th Cir. 2018) (finding more than one year between the contested employment decision and the unwelcome conduct is too long to satisfy the causation element). Olekanma's retaliation claims will therefore be dismissed.

### c.   Hostile Work Environment

Finally, Defendants argue that Olekanma's claims of hostile work environment under Title VII should be dismissed. (Mot. Dismiss at 21–22).

To state a hostile work environment claim, a plaintiff must plead that there is "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected status]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (quoting Okoli v. City of Baltimore, 648 F.3d 216, 220 (4th Cir. 2011)). To determine whether conduct is objectively severe or pervasive, a court is to look at "all the circumstances, including the

frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Perkins v. Int'l Paper Co., 936 F.3d 196, 208 (4th Cir. 2019).

Olekanma alleges that the transfer to the women's prison created a hostile work environment because he "was subjected to watching female inmates[] nude." (Second Am. Compl. ¶ 49). Defendants contend that although Olekanma alleges "a component of [his] job was to observe female inmates nude . . . [t]his allegation does not equate to 'offending conduct' warranting a viable hostile work environment claim." (Mot. Dismiss. at 21).

The Court agrees that Olekanma fails to state a hostile work environment claim. Olekanma fails to allege facts to show that the "unwelcome conduct," in this case—the transfer, was made based on his protected status. Accordingly, Olekanma's hostile work environment claims will be dismissed.[8]

### III.   CONCLUSION

For the foregoing reasons, the Court will grant the Motion to Dismiss (ECF No. 13) and deny the Motion to Strike (ECF No. 21). A separate Order follows.

Entered this 5th day of August, 2024.

_____/s/_____

George L. Russell, III
United States District Judge

---

[8] Olekanma also cites to 42 U.S. Code § 1983 and the Maryland Fair Employment Practices Act ("MFEPA"), Maryland Code Annotated, State Government § 20-602, in Count IV. (Sec. Am. Compl. ¶¶ 46–47). Any claim under 42 U.S.C. 1983 and the MFEPA fails because the analysis is the same as under Title VII. See Johnson v. Baltimore Police Dep't, No. MJM-22-1356, 2023 WL 6381487, at *11 (D.Md. Sept. 29, 2023).